**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Ramone Brown,

    Plaintiff,    Civ. No. 22-2508 (WMW/DTS)

vs.

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

Ty Jindra and
City of Minneapolis,

    Defendants.

---

  Defendant Ty Jindra's criminal proceeding for civil rights violations showed that he is a veteran who proudly served his country, but that he battled serious substance abuse during his time as a Minneapolis police officer. Plaintiff hopes that he is now on the road to recovery.

  The facts tend to show that for years Defendant City of Minneapolis knew or should have known that it was allowing a violent person with serious substance abuse issues to use his authority as a police officer to shake down and menace community members, including ones like Plaintiff Ramone Brown, a hardworking father who has never been on the wrong side of the law except for traffic violations.

  For his Complaint, Plaintiff Brown states and alleges as follows:

## THE PARTIES

1. Plaintiff is an adult who currently resides and has resided in Minnesota at all times relevant to this action. Plaintiff is Black and African American.

2. Defendant Ty Jindra is an adult who at all times relevant to the allegations set forth in this Complaint was acting under the color of state law in his capacity as a law enforcement officer employed by the City of Minneapolis, Minnesota. Plaintiff is suing him in his individual capacity.

3. Defendant City of Minneapolis is a political subdivision of the State of Minnesota. Minneapolis employed Officer Jindra as a police officer at all times relevant to this action. Minneapolis is sued directly and on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes § 466.02 for the unlawful conduct of its employee. Minneapolis is the political subdivision charged with training and supervising Minneapolis law enforcement officers. Minneapolis has established or delegated the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by Minneapolis regarding conducting searches and interacting with members of the community. Minneapolis is therefore also being sued directly under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978).

## JURISDICTION

4. This is an action for relief under 42 U.S.C. §§ 1983 and 1988; and common law. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. Venue

is proper under 28 U.S.C. § 1391, as the acts and omissions giving rise to this action occurred in this district.

## GENERAL ALLEGATIONS

5. Plaintiff was driving his car in South Minneapolis on or around July 5, 2019. Plaintiff was headed to a gas station convenience store with a friend to purchase a Red Bull to drink.

6. Officer Jindra followed Plaintiff in his squad car for several blocks.

7. Plaintiff turned into the gas station parking area and parked his car.

8. Officer Jindra parked his squad car in the gas station parking area.

9. Officer Jindra, who was wearing his police uniform, got out of the squad car.

10. Plaintiff did not engage in any activity that would cause a reasonable police officer to find him suspicious. Yet Officer Jindra approached Plaintiff's car and ordered Plaintiff to stay inside the vehicle. Plaintiff complied with the order.

11. Plaintiff asked Officer Jindra what he did wrong. Officer Jindra did not answer the question and instead rudely ordered Plaintiff to provide his license and registration.

12. Plaintiff told Officer Jindra that his registration and insurance materials were in the back of his vehicle, and that he had just used them to get new license plates.

13. Officer Jindra ordered Plaintiff to get the [f word] out of Plaintiff's vehicle, and Plaintiff complied with the order. Officer Jindra did not allow Plaintiff to retrieve the registration materials.

14. Officer Jindra roughly put Plaintiff in handcuffs, roughly frisk searched Plaintiff, and did not locate any weapons or contraband on Plaintiff.

15. Officer Jindra put Plaintiff in his squad car and locked the vehicle.

16. While Plaintiff was in the squad car, Officer Jindra roughly searched Plaintiff's entire vehicle and broke the center console during the search.

17. Plaintiff did not authorize Officer Jindra to search the vehicle.

18. Plaintiff did not give his consent to Officer Jindra to search the vehicle.

19. Officer Jindra did not locate any weapons or contraband in Plaintiff's vehicle.

20. Officer Jindra opened the rear door of the vehicle, held up a white powdery substance in front of Plaintiff, and asked Plaintiff what it was.

21. Plaintiff told Officer Jindra that he had no idea what the white powdery substance was. Officer Jindra slammed the rear door of the vehicle.

22. Plaintiff saw Officer Jindra roughly frisk search and handcuff Plaintiff's friend, who was observing the interaction.

23. Jindra asked Plaintiff's friend what the white powdery substance was. Plaintiff's friend told Officer Jindra that he had no idea what it was.

24. The white powdery substance did not belong to Plaintiff or his friend. The white powdery substance was something that Officer Jindra already had on him and brought to the interaction.

25. Officer Jindra planted drugs on Plaintiff.

26. Officer Jindra told Plaintiff that he was going to take him to jail in connection with Officer Jindra's white powdery substance. Plaintiff told Officer Jindra that the white powdery substance was not his, and that Officer Jindra would need to take him to jail or let him go.

27. At one point during this interaction Officer Jindra clutched his weapon and yelled to bystanders to get the [f word] back and shut the [f word] up.

28. At some point during the interaction another squad car pulled into the gas station. Officer Jindra spoke with the officer who arrived in the squad car for several minutes. The other squad car drove away.

29. Officer Jindra reentered his squad car and entered information into his dash computer.

30. Officer Jindra got out of the car, opened Plaintiff's door, told Plaintiff to get his [f-ing] registration fixed—even though he never bothered to run Plaintiff's registration information—and released Plaintiff.

31. Plaintiff was cooperative during the entire interaction described above.

32. Officer Jindra was rude, undignified and needlessly hostile during the interaction described above. Officer Jindra was behaving erratically and jittery during the interaction. Plaintiff thought that Jindra might be on drugs.

33. Officer Jindra's conduct caused Plaintiff to experience harm and damages. Officer Jindra's conduct caused Plaintiff to experience offensive physical contact, loss of liberty, loss of civil rights, and to fear for his physical safety.

34. Plaintiff thought that Officer Jindra's erratic conduct, including planting drugs on him and threatening to take him to jail over the planted drugs, would lead to Jindra seriously physically harming Plaintiff. Officer Jindra's conduct caused Plaintiff to fear for his life.

35. A database compiled by the nonprofit organization, Communities United Against Police Brutality, confirms that in the five years prior to the interaction described above, at least 10 misconduct complaints were brought against Officer Jindra with Defendant City of Minneapolis through the Internal Affairs Office or the Office of Police Conduct review.[1] Some or all these complaints involved allegations that Officer Jindra engaged in conduct like the incident described above.

36. Defendant City of Minneapolis took no discipline against Jindra in connection with these complaints, and on information and belief at least one from 2018 is still open.

---

[1] http://complaints.cuapb.org/police_archive/officer/10684/

37. In the two years following the interaction described above, about 10 more complaints were brought against Officer Jindra with Defendant City of Minneapolis through the Internal Affairs Office or the Office of Police Conduct review. Some or all these complaints involved allegations that Officer Jindra engaged in conduct like the incident described above.

38. Defendant City of Minneapolis took no discipline against Jindra in connection with these complaints, and on information and belief at least two from 2019 are still open.[2]

39. As detailed in the PBS series *Frontline*, the City of Minneapolis police department uses a form of corrective action called "coachings" that may not show up in a police officer's personnel record.[3]

40. On information and belief, prior to interacting with Plaintiff, Jindra received coachings involving allegations that he engaged in misconduct like the incident described above.

41. As detailed in the PBS series *Frontline*, a Black City of Minneapolis police lieutenant lost his job over reporting Jindra for engaging in misconduct like the misconduct described above.[4]

42. Officer Jindra's misconduct, as described above, was foreseeable to Defendant City of Minneapolis.

---

[2] http://complaints.cuapb.org/police_archive/officer/10684/

[3] https://www.pbs.org/wgbh/frontline/article/exclusive-video-minneapolis-police-reported-another-mpd-cop-misconduct-police-on-trial-documentary/

[4] https://www.pbs.org/wgbh/frontline/article/exclusive-video-minneapolis-police-reported-another-mpd-cop-misconduct-police-on-trial-documentary/

43. Prior to the interaction described above, Defendant City of Minneapolis knew, or should have known, that Officer Jindra was victimizing members of the public in ways like the way he victimized Plaintiff, as detailed above. City of Minneapolis needlessly exposed members of the public to a dangerous, violent, and aggressive person.

44. In November 2020, Officer Jindra was indicted on 11 federal counts. Here is the text of the media release in connection with the indictment:



**UNITED STATES ATTORNEY'S OFFICE**
*District of Minnesota*

U.S. ATTORNEY ERICA H. MACDONALD

FOR IMMEDIATE RELEASE
November 6, 2020

CONTACT: Tasha Zerna
(612) 664-5743

**FORMER MINNEAPOLIS POLICE OFFICER CHARGED WITH ILLEGALLY ACQUIRING CONTROLLED SUBSTANCES, EXTORTION, VIOLATION OF CIVIL RIGHTS**

United States Attorney Erica H. MacDonald today announced an 11-count federal indictment charging TY RAYMOND JINDRA, 28, with acquiring controlled substances by deception, extortion under color of official right, and deprivation of rights under color of law. JINDRA, who was taken into custody earlier today, made his initial appearance before Magistrate Judge Becky R. Thorson in U.S. District Court in St. Paul, Minnesota.

According to the allegations in the indictment, from September 2017 through October 2019, JINDRA, a former police officer with the Minneapolis Police Department ("MPD"), abused his position in order to obtain and attempt to obtain controlled substances including methamphetamine, heroin, oxycodone, cocaine, and other drugs by deception, extortion, and conducting unconstitutional searches and seizures.

According to the allegations in the indictment, as part of his scheme, JINDRA diverted controlled substances for his own purposes by various means in the course of his duties as a MPD officer. JINDRA diverted controlled substances by not reporting, logging, placing into evidence, or informing his partner or other officers on scene about the controlled substances that he had confiscated. On some occasions, JINDRA would find ways to interact with or search an individual, vehicle, or residence so that he could surreptitiously recover controlled substances without his partner's knowledge. At times, JINDRA conducted searches beyond the scope warranted under the circumstances in attempt to recover controlled substances. At times, JINDRA would turn off his body-worn camera when he found, concealed or diverted controlled substances he lawfully possessed in the course of his duties as a MPD officer.

United States Attorney Erica H. MacDonald thanks the FBI for its skilled investigative work on this case and the Minneapolis Police Department for its immediate notification to the FBI and substantial assistance in bringing this indictment.

Assistant U.S. Attorneys Amber M. Brennan and Michelle E. Jones are prosecuting the case.

45. Plaintiff gave testimony about the incident described above in connection with the criminal charges brought against Officer Jindra in front of a grand jury and during Officer Jindra's criminal trial.

46. Here is Count 9 of the indictment against Officer Jindra, which was in connection with the incident involving Plaintiff described above:

### COUNT 9
(Deprivation of Rights Under Color of Law)

28. The Grand Jury adopts, realleges and incorporates paragraph 2, above, by reference herein.

29. On or about July 5, 2019, in the State and District of Minnesota, the defendant,

**TY RAYMOND JINDRA,**

while acting under color of law, did willfully deprive R.B. of the right, secured and protected by the Constitution and the laws of the United States, to be free from unreasonable searches and seizures, all in violation of Title 18, United States Code, Section 242.

47. On November 2, 2021 a jury returned a verdict finding Officer Jindra guilty of Count 9 of the indictment against him:

### COUNT 9

Deprivation of Rights Under Color of Law

As to Count 9 of the Indictment, we, the Jury, find the defendant, Ty Raymond Jindra,

_guilty_ [SIGNATURE REDACTED]
**GUILTY or NOT GUILTY**

48. The jury also found Officer Jindra guilty of several other criminal counts.

49. During Jindra's sentencing hearing he admitted to taking drugs on the job and violating Plaintiff's civil rights.

50. Officer Jindra was sentenced to prison.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – RACE DISCRIMINATION

51. Plaintiff restates the preceding paragraphs as though fully stated herein.

52. Officer Jindra targeted people of color when he deprived them of their liberty, constitutional rights and civil rights in the manner described above and detailed in the indictment described above.

53. Officer Jindra subjected Plaintiff to the humiliating ordeal detailed above because of his race, color, and ethnicity.

54. The kind of discriminatory policing that Jindra used against Plaintiff Brown was a custom, policy, practice, or procedure that the City of Minneapolis established for its police force.

55. The Minnesota Department of Human Rights ("MDHR") confirmed in an investigative report that the City of Minneapolis police force has engaged

in a pattern of racial discrimination over the past decade and that problem officers have not been held accountable.[5]

56. The MDHR stated on page five of its investigative report that "[a]fter completing a comprehensive investigation, the Minnesota Department of Human Rights finds there is probable cause that the City and MPD engage in a pattern or practice of race discrimination."[6]

57. The MDHR stated on page eight of its investigative report that "the MPD engages in a pattern or practice of discriminatory, race-based policing as evidenced by:

- Racial disparities in how MPD officers use force, stop, search, arrest, and cite people of color, particularly Black individuals, compared to white individuals in similar circumstances.

- MPD officers' use of covert social media to surveil Black individuals and Black organizations, unrelated to criminal activity.

- MPD officers' consistent use of racist, misogynistic, and disrespectful language."[7]

58. Plaintiff suffered harm because of Defendants' unlawful conduct.

---

[5] https://mn.gov/mdhr/assets/Investigation%20into%20the%20City%20of%20Minneapolis%20and%20the%20Minneapolis%20Police%20Department_tcm1061-526417.pdf

[6] *Id.*; Fed. R. Evid. 803(c) (factual findings resulting from a legally authorized investigation are admissible at trial).

[7] *Id.*

11

# COUNT II
## DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS—UNREASONABLE SEARCH

59. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

60. Officer Jindra searched Plaintiff's vehicle.

61. Plaintiff owns the vehicle.

62. Officer Jindra lacked authorization to search Plaintiff's vehicle.

63. Officer Jindra's actions and omissions caused Plaintiff to suffer a violation of his Fourth Amendment rights, through the Fourteenth Amendment.

64. At the time Officer Jindra searched Plaintiff's vehicle, it was clearly established that it is unconstitutional for police officers to conduct unreasonable searches.

65. At the time the Officer Jindra searched Plaintiff's vehicle, it was clearly established that it is unreasonable for police officers to search a vehicle under the type of circumstances under which Officer Jindra searched Plaintiff's vehicle.[8]

66. Plaintiff suffered harm and damages because of the denial of his constitutional rights.

---

[8] *Arizona v. Gant*, 129 S.Ct. 1710, 1714 (2009) ("…we hold that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.").

# COUNT III
## DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – UNREASONABLE SEIZURE

67. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

68. Officer Jindra proximately caused Plaintiff's arrest.

69. Officer Jindra proximately caused Plaintiff's detention.

70. Officer Jindra lacked a warrant authorizing him to arrest, stop, search, or detain Plaintiff.

71. Officer Jindra lacked probable cause or reasonable suspicion to arrest, stop, search, or detain Plaintiff.

72. Officer Jindra lacked a reasonable belief of probable cause or reasonable suspicion to arrest, stop, search, or detain Plaintiff.

73. Officer Jindra otherwise lacked authority to arrest, stop, search, or detain Plaintiff.

74. Officer Jindra's actions and omissions caused Plaintiff to suffer a violation of his Fourth Amendment rights.

75. At the time of the events giving rise to this action, it was clearly established that it is unconstitutional to authorize or execute an arrest, stop, search, or detention absent probable cause or reasonable suspicion.

76. Plaintiff suffered harm and damages because of the denial of his constitutional rights.

## COUNT IV
## NEGLIGENT SUPERVISION (CITY OF MINNEAPOLIS ONLY)

77. Plaintiff re-alleges the allegations of the preceding paragraphs and incorporates those allegations herein by reference.

78. Defendant City of Minneapolis had a duty to supervise Defendant Jindra.

79. Defendant City of Minneapolis failed to exercise ordinary care in supervising Jindra.

80. The MDHR stated on page eight of its investigative report that "MPD officers, supervisors, and field training officers receive deficient training, which emphasizes a paramilitary approach to policing that results in officers unnecessarily escalating encounters or using inappropriate levels of force…accountability systems are insufficient and ineffective at holding officers accountable for misconduct…former and current City and MPD leaders have not collectively acted with the urgency, coordination, and intentionality necessary to address racial disparities in policing to improve public safety and increase community trust."[9]

81. The MDHR stated on page 60 of its investigative report that "the MPD does not use its data to identify patterns that would enable MPD to provide better training for and supervision of officers, to provide officers with

---

[9] https://mn.gov/mdhr/assets/Investigation%20into%20the%20City%20of%20Minneapolis%20and%20the%20Minneapolis%20Police%20Department_tcm1061-526417.pdf

14

needed support, or to address and correct discriminatory policing practices that undermine public trust and erode public safety."[10]

82. Defendant City of Minneapolis' failure to exercise ordinary care in supervising Jindra resulted in Jindra engaging in foreseeable misconduct that caused Plaintiff to suffer harm and damages.

## COUNT V
## NEGLIGENT RETENTION (CITY OF MINNEAPOLIS ONLY)

83. Plaintiff re-alleges the allegations of the preceding paragraphs and incorporates those allegations herein by reference.

84. Defendant City of Minneapolis had a duty to supervise Defendant Jindra.

85. Defendant City of Minneapolis knew or should have known that Jindra's previous misconduct rendered him needlessly dangerous and unfit to police.

86. Defendant City of Minneapolis' negligent retention of Jindra as a police officer resulted in Jindra engaging in foreseeable misconduct that caused Plaintiff to suffer harm and damages.

## COUNT VI
## ASSAULT

87. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

---

[10] https://mn.gov/mdhr/assets/Investigation%20into%20the%20City%20of%20Minneapolis%20and%20the%20Minneapolis%20Police%20Department_tcm1061-526417.pdf

15

88. Officer Jindra acted with the intent to cause apprehension or fear of immediate offensive contact with Plaintiff.

89. Officer Jindra had the apparent ability to cause the offensive contact.

90. Plaintiff had a reasonable apprehension of fear that the immediate offensive contact would occur.

91. Officer Jindra's assault caused Plaintiff to experience harm and damages.

## COUNT VII
## BATTERY

92. Plaintiff restates the preceding paragraphs as though fully stated herein.

93. Officer Jindra intentionally caused harmful or offensive contact with Plaintiff.

94. Officer Jindra's harmful or offensive contact with Plaintiff caused Plaintiff to experience harm and damages.

## COUNT VIII
## FALSE IMPRISONMENT

95. Plaintiff restates the preceding paragraphs as though fully stated herein.

96. Officer Jindra intentionally restricted Plaintiff's physical liberty by words or acts.

97. Plaintiff was aware of or was harmed by these words or acts of Officer Jindra.

98. There was no reasonable means of escape known to Plaintiff.

99. Plaintiff's arrest was made without proper legal authority.

100. As a proximate cause of Officer Jindra's false imprisonment of Plaintiff, Plaintiff suffered harm, thereby entitling Plaintiff to recover damages.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101. Plaintiff restates the preceding paragraphs as though fully stated herein.

102. Officer Jindra's conduct was extreme and outrageous.

103. Officer Jindra's conduct was intentional and reckless.

104. Officer Jindra's conduct caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.

105. As a proximate cause of Officer Jindra's intentional infliction of emotional distress, Plaintiff suffered harm, thereby entitling Plaintiff to recover damages.

## JURY DEMAND

106. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on his claims against Defendants in an amount to be proven at trial;

2. Declare that Defendants' conduct, as set forth above, violated Plaintiff's rights under the Constitution;

3. Allow Plaintiff damages to compensate him for the injuries he suffered because of Defendants' unlawful conduct;

4. Allow Plaintiff punitive damages with respect to Plaintiff's claims arising under federal law, the exact amount to be proven at trial;

5. Grant Plaintiff leave to amend the complaint to include a claim for punitive damages with respect to his claims arising under state law, the exact amount to be proven at trial;

6. Allow Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees under 42 U.S.C. § 1988;

7. Grant Plaintiff all statutory relief to which he is entitled;

8. Grant Plaintiff leave to amend this Complaint if the Court finds it deficient in any way;

9. Grant any other relief the Court deems just and equitable.

Dated: October 20, 2022

Joshua R. Williams (#389118)
jwilliams@jrwilliamslaw.com
1330 Lagoon Avenue, Suite 400
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Fax

**ATTORNEY FOR PLAINTIFF RAMONE BROWN**